IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JAMES LEE LUTTRELL                                                                                    PLAINTIFF


v.                                              CASE NO.        13-3117


CAROLYN W. COLVIN, Commissioner
of Social Security Administration                                                                  DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.  Procedural Background:

The plaintiff filed an applications for DIB on June 20, 2011, alleging an onset date of January 31, 2010, due to plaintiff's Post laminectomy Syndrome, Lumbosacral Radiculitis, Spondylosis of Lumbosacral Joint, Gout, Diabetes, and Depression (T. 180).  Plaintiff's applications were denied initially and on reconsideration.  Plaintiff then requested an administrative hearing, which was held on September 10, 2012.  Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 61 years of age and possessed a

10th grade education.  The Plaintiff had past relevant work ("PRW") experience as a groundskeeper for a school district and manager of a self storage area  (T. 181).

On November 30, 2012, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's post-laminectomy syndrom, lumbar spine disorder, diabetes mellitus, type 2, obesity and hearing loss did not meet or equal any Appendix 1 listing.  T. 15.  The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform medium work except he can never climb ladders, ropes and scaffolds, and he can frequently bend, stoop, kneel, crouch and crawl.  He also determined that plaintiff could occasionally walk on uneven terrain , work at heights and operate foot controls with his left lower extremity, but he was limited to occupations that do not require fine hearing capability.  T. 15.  With the assistance of a vocational expert, the ALJ then determined Plaintiff could  perform his past relevant work.

## II.  Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id*.  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the

evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

The court has reviewed the Briefs filed by the Parties, the Transcript of the proceedings before the Commission, including a review of the hearing before the ALJ, the medical records, and relevant administrative records and finds the ALJ's decision is supported by substantial evidence.

**A. Severe Impairment:**

The Plaintiff contends the ALJ erred in failing to find that Plaintiff had a sever impairment involving his right shoulder. (ECF No. 7, p. 3). The Plaintiff bases this claim upon a report by a treating physician, Dr. Haghi, in 2008 that the Plaintiff had limitations in shoulder range (T. 396) and that he had medically imposed work restriction of not reaching above his shoulder with his right arm, lifting greater than 10 pounds or climbing ladders. (Id.). In February 2008, Plaintiff told Dr. Haghi that his shoulder was functional, that he was pleased with its recovery, and he wanted to return to full duty at work (Tr. 14, 394-95). The record reveals that Dr. Haghi noted that the "patient is released to return to modified duty with the following restriction on 03/12/2008 through 04/16/2008". (T. 389). The restrictions were only for the specified time in the report.

In addition the Plaintiff continued to work until March 2010. On March 17, 2010 his medical records indicate that he had "just moved to the valley recently because lost his job and wife was dx with terminal CA. Wife is now in hospice." (T. 322). At the hearing the Plaintiff, when asked why he stopped working at the storage, stated that "my wife passed away and we were hired as a couple. So we were terminated because we were hired as a couple and they wanted a couple to continue that. So we moved away." (T. 52). The Plaintiff then tries to qualify that response by saying that he was "having trouble with my back even then" and the doctor told him not to work. (Id.)[1].

A "severe impairment is defined as one which 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Pelkey v. Barnhart*, 433 F.3d 575, 577

---

[1] The court cannot find any evidence to support this statement.

(8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)). If the impairments result in no more than minimal functional limitations, the impairments are not severe. *Pepper ex rel. Gardner v. Barnhart* 342 F.3d 853, 854 (C.A.8 (Mo.),2003); Social Security Ruling 96-3p. The claimant has "the burden ... of showing ... that [s]he has a medically severe impairment or combination of impairments." *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 2294 n. 5, 96 L.Ed.2d 119 (1987). *Riley v. Shalala* 18 F.3d 619, 621 (C.A.8 (Ark.),1994).

The ALJ observed that Plaintiff's most recent medical records did not show ongoing complaints of right shoulder pain (Tr. 14, 258-329). In addition, in March 2011, Plaintiff visited Robert MacArthur, M.D., a consultative orthopedist, and his examination revealed no tenderness, spasm, atrophy, or decreased range of motion in his shoulders (Tr. 14, 353-59).

The burden is on the Plaintiff to show that the impairment is sever and the Plaintiff clearly failed to establish that burden.

**B.  Treating Physician Discounted**

The Plaintiff next argues that the ALJ erred in giving controlling weight to the opinion of the one-time consultive examiner over the opinions of his treating physicians. Dr. Catherine Potyondy (T. 16, 19, 398)  and Dr. Kevin Jackson (T. 19, 372-373) found significant restrictions on the Plaintiff's ability to do work related activity. Dr. Robert MacArthur, a board certified orthopedist, found the Plaintiff to be able to lift 50 pounds occasionally and 25 pounds frequently (T. 358), and had some postural and agility limitations (T. 359).

 RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§

404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing Lauer v. Apfel, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

When determining disability benefits claimant's residual functional capacity (RFC), the ALJ must consider, in addition to medical evidence, the observations of treating doctors and others and the claimant's own description of her limitations. 20 C.F.R. § 404.1545. *See Willcockson v. Astrue,* 540 F.3d 878 (C.A.8 (Mo.),2008). The opinion of a treating physician is accorded special deference and will be granted controlling weight when well-supported by

medically acceptable diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000).

Under the Social Security regulations, the amount of weight given to a non-controlling medical opinion is determined by applying the following factors: (1) whether the source has examined the claimant; (2) the length, nature, and extent of the treatment relationship and the frequency of examination; (3) the extent to which the relevant evidence, "particularly medical signs and laboratory findings," supports the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the opinion is related to the source's area of specialty; and (6) other factors "which tend to support or contradict the opinion." 20 C.F.R. §§ 404.1527(d), 416.927(d); *See Owen v. Astrue* 551 F.3d 792, 800 (C.A.8 (Iowa),2008) *citing Wagner*, 499 F.3d at 848. (concluding that ALJ properly considered claimant's "noncompliance for purposes of determining the weight to give [doctor's] medical opinions"); Crease v. Astrue 2012 WL 380277, 4 (N.D.Cal.) (N.D.Cal.,2012).

*See Halverson v. Astrue*, 600 F.3d 922, 929-30 (8th Cir. 2010) (explaining that "[w]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (internal quotation marks and citation omitted)); *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (holding that the ALJ properly discounted the treating physician's opinion that consisted of three checklist forms, cited no medical evidence, and provided little to no elaboration); *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005) (recognizing that "[w]e have upheld an ALJ's decision to discount a treating physician's [medical source statement] where the limitations listed on the form stand alone, and were never

mentioned in [the physician's] numerous records o[f] treatment nor supported by any objective testing or reasoning" (first and second alterations added) (internal quotation marks and citation omitted)).

In March Dr. Haghi noted that Plaintiff's activities of daily living had not been affected (Tr. 14, 395). As noted above Dr. Haghi released the Plaintiff to return to work which he did until his wife became terminally ill. The loss of the Plaintiff's job was attributable to his wife's illness and not to any condition associated with the Plaintiff.

The Plaintiff alleged an onset date of January 31, 2010 (T. 176). As noted above he continued to work until March 2010 when his wife became terminally ill. In *Johnson v. Apfel*, 240 F.3d 1145, 1148-49 (8th Cir.2001), the court stated "[a]cts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." *See Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir.2005) (holding that working after the onset of an impairment is some evidence of an ability to work).

In June 2010, Catherine Potyondy, M.D., noted that Plaintiff reported back pain and, on examination, he had normal strength and no atrophy and normal straight leg raise test, but had some decreased range of motion on extension with lateral flexion on the left and the left sacroiliac joint (SI) area (Tr. 16, 19, 277-78, 280-81). Dr. Potyondy diagnosed Plaintiff with spondylosis of the lumbosacral joint and lumbosacral radiculitis (Tr. 16, 191, 281). Dr. Potyondy placed Plaintiff on modified activity restriction such that Plaintiff could not stand continuously more than 15 minutes at a time and no more than 1 hour a day; walk continuously more than 20 minutes at a time and no more than 1 hour per day; sit continuously more than 30 minutes at one time and no more than 4 hours per day; continuously bend at the waist; continuously twist the

torso/spine; lift/carry more than 20 pounds for 5 minutes; and push/pull (Tr. 16, 19, 398).  In December 2010, Dr. Potyondy's physical examination of Plaintiff showed normal strength without atrophy and a normal straight leg raise test, but he also showed some decreased range of motion on extension with lateral flexion on the left and tenderness in the SI area (Tr. 14, 19, 269-70.

In December 2010, Dr. Potyondy's physical examination of Plaintiff showed normal strength without atrophy and a normal straight leg raise test, but he also showed some decreased range of motion on extension with lateral flexion on the left and tenderness in the SI area (Tr. 14, 19, 269-70.  In December 2010, Dr. Potyondy's physical examination of Plaintiff showed normal strength without atrophy and a normal straight leg raise test, but he also showed some decreased range of motion on extension with lateral flexion on the left and tenderness in the SI area (Tr. 14, 19, 269-70

The ALJ found that Dr. Potyondy's examination findings were inconsistent with the restrictions she assessed (Tr. 19).  *See Halverson v. Astrue*, 600 F.3d 922, 929-30 (8th Cir. 2010) (explaining that "[w]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight"

In March 2012, Plaintiff visited Kevin Jackson, M.D., and only complained of difficulty hearing (Tr. 19, 376). Plaintiff reported that he had not taken medications for six months (Tr. 19, 376). The record also reveals that the Plaintiff was consistently told to stop smoking by his treating physicians but refused to do so. In addition to the results of objective medical tests, an ALJ may properly consider the claimant's noncompliance with a treating physician's directions, *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir.2001), including failing to take prescription

medications, *Riggins,* 177 F.3d at 693, seek treatment, *Comstock v. Chater*, 91 F.3d 1143, 1146-47 (8th Cir.1996), and quit smoking. *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir.1997); *Choate v. Barnhart* 457 F.3d 865, 872 (C.A.8 (Mo.),2006).

Dr. Jackson's physical examination revealed no musculoskeletal abnormalities, and Dr. Jackson documented that Plaintiff's gait was within normal limits (Tr. 19, 376). Later in March 2012, Plaintiff reported no complaints concerning his back (Tr. 19, 378). Dr. Jackson's physical examination showed a normal gait and no musculoskeletal abnormalities (Tr. 19. 378). In April 2012, Plaintiff's examination revealed no musculoskeletal abnormalities and his gait was normal (Tr. 19, 379).

In March 2011, Dr. MacArthur, a consultative orthopedic physician, documented that Plaintiff had negative straight let raise tests, normal range of motion in his hips with no swelling or tenderness, 5/5 motor strength5 in his upper and lower extremities, normal muscle bulk and tone, normal sensory examination, normal and equal deep tendon reflexes (DTR's) in his upper and lower extremities, normal pulses, normal Romberg, the ability to walk without difficulty, and the ability to walk on his toes and heels (Tr. 17, 353-59). Dr. MacArthur noted pain with hyperexten sion at the left lateral bending radiating to his left buttock (Tr. 17, 357). Dr. MacArthur observed no gross deformities, tenderness, spasm, or atrophy, and ranges of motion were within normal limits in Plaintiff's shoulders (Tr. 17, 357). Dr. MacArthur opined that Plaintiff was able to push, pull, lift and carry 50 pounds occasionally and 25 pounds frequently; walk and stand 6 hours per day; sit without restrictions; bend, kneel, stoop, crawl, and crouch frequently; walk on uneven terrain; climb ladders; work with heights; and had no restrictions with the use of his hands (Tr. 19, 358-59).

Opinions of specialists on issues within their areas of expertise are "generally" entitled to more weight than the opinions of non-specialists. See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). *Guilliams v. Barnhart* 393 F.3d 798, 803 (C.A.8 (Mo.),2005), 20 C.F.R. § 404.1527 . "When one-time consultants dispute a treating physician's opinion, the ALJ must resolve the conflict between those opinions." *See Wildman v. Astrue* 596 F.3d 959, 969 (C.A.8 (Iowa),2010) citing *Wagner v. Astrue*, 499 F.3d 842, 849 (8th Cir.2007). The ALJ gave Dr. MacArthur's opinion significant weight because it was supported by and consistent with the evidence of record as a whole (Tr. 19). Thus, the ALJ properly weighed Dr. MacArthur's opinion. *See Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004) (ALJ properly relied on consultative examination that was consistent with treating records).

C.  **Ability to Perform Past Relevant Work**.

The Plaintiff's past relevant work was as a storage facility rental clerk.  A vocational expert testified that Plaintiff's storage facility rental clerk job was an unskilled, light exertional level job accordingly to the Dictionary of Occupational Titles (DOT) (Tr. 55-56). See DOT, 295.367-026, 1991 WL 672594 (4th ed. revised 1991). The vocational expert testified that the job was medium as Plaintiff performed it (Tr. 56). Based upon this evidence, the ALJ determined that Plaintiff was able to return to his past job as a storage facility rental clerk as he performed it and as it is generally performed (Tr. 20).  Based upon the RFC determined by the ALJ the plaintiff could return to his past relevant work.

D.  **Grid Determination.**

The ALJ properly found Plaintiff not disabled at step four (Tr. 20). Plaintiff reported that his past relevant work included storage facility rental clerk (Tr. 42-43, 181, 208-213). In response

to a hypothetical question from the ALJ that included all limitations supported by the record, the vocational expert testified that Plaintiff was able to perform his past relevant work (Tr. 15, 20, 55-57). Based upon the vocational expert's testimony, the ALJ found that Plaintiff could return to his past relevant work (Tr. 20).

In addition, the ALJ considered Plaintiff's activities of daily living (Tr. 14, 16, 18). See 20 C.F.R. § 404.1529(c)(3)(I). Plaintiff was able to attend to his personal care, did laundry, shopped for groceries, visited the bank, prepared meals, washed dishes, swam for exercise, vacuumed, dusted, talked on the phone, walked outside, drove a car, watched television, and was able to handle money and count change (Tr. 14, 16, 18, 187-97, 365). These activities do not support plaintiff's claim of disability. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor)

### IV. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated this 16th day of January 2015.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
U. S. MAGISTRATE JUDGE